GARCIA V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-02-338-CR

DANIEL ANTHONY GARCIA APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

A jury convicted Appellant Daniel Anthony Garcia of two counts of intoxication manslaughter and sentenced him to seventeen years’ confinement for each offense to be served concurrently.  The parties are familiar with the facts of this case, and the controlling law is well-settled.  We will affirm.

In one point, Appellant complains that the evidence is factually insufficient to prove he operated the motor vehicle that caused the deaths of Billy Baker and Theresa McIntire.
(footnote: 2)  Specifically, Appellant directs us to the portion of Theresa Adams’s testimony, in which she testified that she did not witness the accident, and the portion of Stacy Glover’s testimony, in which she agreed that she was not “making a 100-percent identification” of Appellant as the driver.
(footnote: 3) 

We have carefully examined all of the evidence in the record concerning Appellant’s alleged operation of a motor vehicle in a neutral light, favoring neither party.
(footnote: 4)  Donald Herrin, who was Appellant’s employer, testified that he gave Appellant permission to use one of his company’s dual-wheel pickup trucks during the weekend covering September 1, 2001 while Herrin was out of town.  Upon his return on September 1, 2001, Herrin observed that neither the truck nor Appellant was in the RV park, where Appellant was living and where Herrin was keeping the truck. 

Theresa Adams testified that, around 11:30 or 11:35 p.m. on September 1, 2001, she was working at a McDonald’s restaurant on Morgan Street near Highway 377, when she saw Appellant driving a green dual-wheel pickup truck through the drive-through window.  Adams testified that Appellant’s speech was slurred, his eyes were halfway closed, and his mobility was impaired.  In fact, she testified that Appellant fell asleep while waiting for his food and had to be awakened to receive his order.  Adams observed Appellant leave McDonald’s around 11:45 and turn north on Morgan Street.  As Appellant left the parking lot, Adams observed him hit a yellow pole with the front passenger side of his truck. 

Stacy Glover testified that she was driving south on Morgan Street on September 1, 2001 when she saw two people riding on a motorcycle, which was also traveling south on Morgan Street.  Glover testified that they both stopped at the light at Paluxy Highway and Morgan Street, and as the light turned green, she heard a “roaring noise” from behind.  According to Glover, the noise was coming from a green pickup truck that did not have its headlights on and was moving at a “heavy rate of speed.”  Glover testified that she was afraid the truck might hit her and that, as she glanced at the passing truck, she saw the truck’s driver by the street lights. 

Glover watched the truck drive onto the shoulder of the road, careen into a ditch, and then swerve over into her lane in front of her car, where it collided with the motorcycle.  Glover testified that she saw sparks flying because the motorcycle was stuck underneath the truck and was being “drug over to the oncoming traffic.”  Horrified, Glover went to a nearby Texaco gas station to tell a police officer about the accident and that two people had been killed.  During trial, the medical examiner testified that Billy Baker and Theresa McIntire, the motorcycle’s passengers, died from injuries sustained during the collision. 

At 11:52 Granbury police officer Richie Haught received an “attempt to locate” dispatch regarding a green one-ton, dual-wheel pickup truck that was without headlights and smoking heavily.  Officer Haught found a truck emitting smoke and matching the description of the suspect truck in McKelvey’s Marina parking lot on South Morgan Street.  As Officer Haught approached the truck, he saw that it was unoccupied, and he detected a strong odor of alcohol coming from inside the truck.  The police later found a videotape that Baker and McIntire had rented from the Movie Gallery on September 1, 2001 lodged in the grille of the green dual-wheel pickup truck found at the marina.  According to State’s Exhibit 28, McKelvey’s is located approximately 1000 to 1500 feet south of an EZ Mart. 

Glover testified that she went back to the scene of the accident and then proceeded south down Morgan Street.  She decided to stop at the EZ Mart, which was around one half to three quarters of a mile south of the accident site.  As she walked in, Glover saw a man standing at the counter who looked intoxicated.  Thinking he was the driver of the truck involved in the accident, she stated aloud, “That looks like the driver of that truck.”  The store clerk responded, “No, he does not drive. . . . He lives right there.”  

Not believing the clerk, Glover went to an officer at the marina and told him that “[t]here was a gentleman at EZ Mart that was drunk.”  Glover also looked at the truck at the marina and told the officers that it was the truck she had seen hit the motorcycle.  While Glover said at trial that she could not identify Appellant as the driver of the truck with 100 percent certainty, she agreed that the man in EZ Mart looked similar to the man that was driving the truck.  On cross-examination, Glover agreed that she “got a momentary glance at the driver of the truck who was sitting above [her] eye level behind tinted windows in an area of road that was lit basically by street lights.” 

During the ensuing investigation, the police went to EZ Mart and brought Appellant to the truck at the marina.  Adams also came by the marina after her shift ended, and the police told her that they suspected the green dual-wheeled truck had been involved in an accident.  Adams told Officer Haught that “that vehicle just came through her line at McDonald’s and that she could identify the driver.”  She identified Appellant as the driver of the truck. 

Appellant was taken to Lake Granbury Medical Center, where phlebotomist Francis Lloyd drew a sample of his blood.  Appellant’s blood sample was tested, and the results showed that Appellant had a blood alcohol level of .314, which is nearly four times over the legal limit of .08.
(footnote: 5)  Lloyd testified that, while she took his blood, Appellant told her “that the police had told him that he had killed somebody,” but that “he was denying it.”  Appellant admitted to Lloyd, however, that he had been upset that night and had been drinking at a bar.  While Lloyd could not remember whether Appellant had said he was “driving” home, she testified that “[h]e said that he was going home . . . [that] he was on his way home and that he had gone the wrong direction.” Lloyd said that Appellant then started “talking about . . . the policeman being there and arresting him.” 

While Appellant was in jail awaiting trial, Herrin went to visit with him about the accident.  When Herrin asked Appellant what had happened, Appellant told him that “he messed up . . [and] he was sorry.”  Further, Herrin testified that Appellant told him that “he was in the  truck by hi[m]self . . . the whole time.” 

Upon reviewing the evidence under the applicable standard of review,
(footnote: 6) giving due deference to the factfinder’s determinations, we conclude that the evidence presented at trial was factually sufficient to establish that Appellant was operating the motor vehicle that caused the deaths of Billy Baker and Theresa McIntire.

We therefore overrule Appellant’s sole point and affirm the trial court’s judgment.  

PER CURIAM

PANEL F: GARDNER, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
 47.2(b)

DELIVERED:  January 22, 2004

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
See
 
Tex. Penal Code Ann
. § 49.08 (Vernon 2003); 
Freeman v. State
, 69 S.W.3d 374, 376 (Tex. App.—Dallas 2002, no pet.) (stating that courts review the totality of the circumstances in determining whether a person was operating a vehicle).

3:
See Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003) (stating that a proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal).

4:
See Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996).

5:
See
 
Tex. Penal Code Ann.
 § 49.01(2)(B) (Vernon 2003).

6:
See Johnson
, 23 S.W.3d at 8-9; 
Clewis, 
922 S.W.2d at 136.